RECEIVED BY MAIL
APR 2 9 2019
Clerk, U.S. District Court
Fergus Falls, Minnesota

# UNITED STATES DISTRICT COURT

for the

8th Circuit

District of Minnesota

Division 6

| | |
|---|---|
| Richard C. Carrier, Ph.D. *Plaintiff* | Case No. 19cv 1152 PJS/LIB |
| -v- | Jury Trial:  √ Yes    No |
| Paul Z. Myers, Ph.D. *Defendant* | |

## COMPLAINT FOR A CIVIL CASE

**I.    The Parties to This Complaint**

  **A.    The Plaintiff**

   Here petitioning *pro se* is Richard C. Carrier, Ph.D., residing at

   134 West Tulane Rd., Apt. B, Columbus, Ohio 43202-1943 (Franklin County)

   Phone (mobile): (510) 932-9536
   Email: richard.carrier@icloud.com



**B.     The Defendant**

Professor Paul Z. Myers, Ph.D., residing at

300 College Ave., Morris, MN 56267-2104 (Stevens County)

Phone: (320) 491-5704
Email: pzmyers@gmail.com

## II.     Basis for Jurisdiction

1. This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2. This Court enjoys personal jurisdiction over the Defendant pursuant to 28 U.S.C. § 1391(b)(1) because Minnesota is the judicial district in which the Defendant resides.

3. This Court enjoys venue under 28 U.S.C. § 1391(b)(2) because all or a substantial portion of the events that gave rise to Plaintiff's claims accrued within the State of Minnesota, including Defendant's publication and republication of the defamatory falsehoods in and from the district.

## III.    Statement of Claim

4. Plaintiff, Dr. Richard Carrier (hereinafter "Dr. Carrier" or "Plaintiff"), is an author and public speaker, a Ph.D. in the history of philosophy from Columbia University, a baccalaureate of the University of California Berkeley, and author of numerous scholarly books and articles published by reputable publishing houses, including, *Sense and Goodness Without God* (2005), *Not the Impossible Faith* (2009), *Why I Am Not a Christian* (2011), *Proving History* (2012), *Hitler Homer Bible Christ* (2014), *On the Historicity of Jesus* (2014), *Science Education in the Early Roman Empire* (2016), and *The Scientist in the Early Roman Empire* (2017). Dr. Carrier has authored chapters in many other books and articles in magazines and academic journals, and on his namesake blog. Dr. Carrier lectures and teaches worldwide. Dr. Carrier has been a resident of the State of Ohio since May of 2016.

5. Defendant, **Paul Z. Myers, Ph.D.** (hereinafter "Dr. Myers" or "Defendant"), co-founded and at all times relevant was the CEO of the FreethoughtBlogs Network, where he hosts and authors the blog titled *Pharyngula* as well as the blogs of many other select persons; including the blog of the Plaintiff, "Richard Carrier Blogs," from the year 2011 to 2016. In 2006, the science journal *Nature* ranked *Pharyngula* as first among its "Top Five Science Blogs," based on popularity. In 2009, noted journalist and blogger Hemant Mehta placed *Pharyngula* at the top of the list, based on subscriptions, "The 30 Most Popular Atheist Blogs." Dr. Myers has resided in Minnesota since before 2016.

6. Defendant is the author of the June 21, 2016 blog post entitled, "Richard Carrier's blog" (hereafter "Blog Post") which contained defamatory statements against the Plaintiff.

7. The number of broadband subscribers in the United States with access to Defendant's statements is more than 100 million according to the Organization of Economic Cooperation and Development ("OECD"). *Total Fixed and Wireless Broadband Subscriptions by Country* (Dec. 2015), available at http://www.oecd.org/internet/broadband/oecdbroadbandportal.htm (last visited August 11, 2016). The number of broadband subscribers in other English speaking nations with access to Defendant's statements, according to the OECD, is as follows: UK 24.65 million, Canada 13 million, Australia 6.76 million, New Zealand 1.47 million, and Ireland 1.3 million. *Id.*

## CASE HISTORY

8. Defendant's defamatory statements were among a series of other parties publishing further defamation of the Plaintiff, causing Plaintiff to file a multi-count suit against all parties, including Defendant, on September 20, 2016, in the United States District Court, Southern District of Ohio, Eastern Division (*Richard Carrier v. FreethoughtBlogs Network et al.*, hereafter *Carrier v. FreeThought Blogs*; Case Number 2:16-cv-00906, judge Michael H. Watson and Magistrate Judge Deavers presiding).

9. Previous to that action, on July 26, 2016, Dr. Carrier, by and through counsel, sent to Defendant Myers a cease and desist letter by Certified U.S. Mail. Among other demands, Dr. Carrier insisted on a full written retraction (*Carrier v. FreethoughtBlogs*, Complaint, Dkt. 1, Exhibit 6); received on July 29 (Ibid., Exhibit 10). In response to which Defendant reaffirmed his defamation of Plaintiff. Subsequent to which Plaintiff sued the Defendant.

10. Through common counsel the defense in *Carrier v. FreethoughtBlogs* then filed a motion to dismiss for lack of personal jurisdiction in December of 2016, alleging that Ohio was an improper venue for Plaintiff's action. This motion and others were contested in court through an arduous series of motions and briefs until the Ohio court ruled in favor of the defense, but without prejudice, instructing Plaintiff to re-file in another state (*Carrier v. FreethoughtBlogs*, Decision & Entry, Docket No. 43, issued November 14 of 2018).

11. Plaintiff had filed suit against the Defendant by September 20, 2016, within four months after the initial defamation was published, which is within the statute of limitations for both Ohio and Minnesota. Plaintiff also filed a motion in Ohio court to toll the statute of limitations on 13 June of 2017, which is less than one year after the initial defamation was published, which is also within the statute of limitations for both Ohio and Minnesota. Which motion the Ohio court "denied without prejudice...as moot" (Ibid., p. 5), instructing Plaintiff to re-file later in an appropriate jurisdiction and address therein the objections to tolling the statute that were stated in Defense's original Brief in Opposition to that motion.

12. Plaintiff has acted accordingly and is so doing. The requisite response to opposing a tolling of the statute in Minnesota is provided herein, after the statement of facts in this case.

### STATEMENT OF FACTS

13. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

14. Through and as a result of his accomplishments in a career spanning more than two decades, Dr. Carrier has become well known to the public throughout the United States and the world as a professional writer, lecturer, and teacher, and has created for himself a unique public personality and image; and his image, likeness and public personality have become commercially valuable commodities.

15. Dr. Carrier's current occupation is that of author, co-author, lecturer, teacher, debater, and blogger, and he continues to write books professionally and tour the United States and beyond to promote and sell his work. He pursued this occupation part-time for decades, developing a fan base and revenue and reputation as an honest and reliable authority, and has pursued this occupation full-time since January of 2015.

16. Dr. Carrier has also been and wishes to remain an active political, social, and philosophical commentator, and an active professional scholar who participates in academic societies, conferences, and research, for all of which his reputation is a valuable asset.

17. Dr. Carrier has had professional relationships and valid ongoing business expectancies with various reputable publishing houses and co-authors.

18. Dr. Carrier has had professional relationships and valid ongoing business expectancies with organizations that include: the Secular Student Alliance (SSA), and the SSA's hundreds of campus affiliates, Camp Quest, and its many regional affiliates, the Center for Inquiry, the Freedom From Religion Foundation, the United Coalition of Reason, American Atheists, Atheist Alliance of America, the American Humanist Association, and the Council for Secular Humanism, and hundreds of other secular and religious community groups across the United States and beyond, which include organizations of humanists, atheists, and skeptics, as well as ethical societies, and churches and religious organizations (who have hired him for interfaith work). All of which have been his principal source of speaking and direct sales income.

19. In January of 2015 Dr. Carrier also became an outspoken polyamorist and advocate for polyamory, or "ethical non-monogamy," endorsing and ethically pursuing open and multiple relationships. He has for many years been an outspoken advocate for ethical conduct in the treatment of women and men, and an ardent defender of responsible, sex-positive feminism, and ethical non-monogamy, and as a crucial part of that advocacy, he has himself always respected anyone's stated boundaries, and would never subject anyone to actual harassment of any kind.

### *Defendant's False and Defamatory Statements*

20. In Dr. Myers' "Blog Post" he states and republishes false and defamatory allegations of sexual harassment (hereafter the "Allegation"). The article reads, in its entirety, as follows:

> "One of our writers, Richard Carrier, has been banned from Skepticon for 'his repeated boundary-pushing behavior'. This is, obviously, a serious accusation, and we've been investigating further. We now have several first-hand reports of persistent, obnoxious sexual behavior in defiance of specific requests that he cease. We believe his accusers.
>
> "Here at Freethoughtblogs, we are sex-positive, but we are also committed to the principle of consensual sexual behavior. We go further, and beyond demanding that there always be consent, we also insist on respect for your partners. No means no, not just because it's held as a dogmatic rule, but because it reflects a sincere appreciation of the autonomy of other people. We cannot tolerate violations of this essential principle.
>
> "While Dr Carrier has been a valued contributor to this network, we have to demand support of that principle in actions as well as words. After a review of the evidence so far, Richard Carrier's posting privileges have been suspended, pending further evaluation, and all comments on his blog have been closed.
>
> "If you wish to make a testimonial, pro or con, about Dr Carrier, you can send them to me in confidence. We will consider all the evidence before making a final decision on his case.
>
> "We also support Skepticon and their commitment to equality and justice. If you do too, donate."

21. A true and correct copy of Myers' June 21, 2016, article, "Richard Carrier's Blog," is attached hereto marked **Exhibit 1**.

22. False and defamatory statements attached hereto as Exhibit 1 include, but are not limited to, the assertion that Dr. Carrier engaged in "persistent" sexual behavior "in defiance of specific requests that he cease."

23. The quoted passage attached hereto as Exhibit 1 is defamatory, intentionally reckless and malicious.

24. On information and belief, Defendant made no effort to investigate or substantiate the Allegation's veracity before publishing it, or before republishing and affirming others' allegations, all of which the Defendant either knew to be false or made with reckless disregard as to truth or falsity.

25. There is no evidence anyone had alleged the Plaintiff engaged in any behavior "in defiance of specific requests that he cease." This assertion is not found in any other published statements Plaintiff is suing other parties for (Amy Franj-Skiba in Arizona, and Skepticon, Inc., and its president Lauren Lane, in Missouri), nor elsewhere. Defendant is therefore responsible for publishing a uniquely defamatory allegation.

26. As a direct and proximate cause of Defendant's false and defamatory statements and at the direction of the Defendant, its CEO, FreethoughtBlogs.com blocked Dr. Carrier's access to his blog, and from publishing content.

27. FreethoughBlogs.com proposed to investigate Defendant's claims only after publishing them, refusing to identify Dr. Carrier's accuser(s) or to specify any of the allegations made against him (as to what he is alleged to have done, where, or when), rendering impossible a fair and effective investigation, and ultimately forcing Dr. Carrier to relocate his body of work to a domain of his own, RichardCarrier.info, to regain promotional and publishing control from FreethoughtBlogs' interference.

### *Evidence of Actual Malice*

28. Demonstrative of Defendant's malice or reckless disregard, the policies and practices described herein were previously the topic of a presentation sponsored and organized by Dr. Myers for his FreethoughtBlogs Network, styled *Sexual Harassment Law and You*, in which California attorney and law blogger Ken White expounded sexual harassment laws and private anti-harassment policies for convention organizers, to wit:

> " . . . *it's good policy to ask the accused for their side of events*, because, number one, it gives credibility and effectiveness to the anti-harassment policy and the procedure. And, number two, it wards off potential litigation, possibly bogus litigation, *possibly litigation with some merit in it . . .*" (emphasis added).

> " . . . an anti-harassment policy *doesn't mean* that you automatically believe, or accept, everything that's ever said to you in a complaint" (emphasis added).

> "[One] . . . step in investigation that your investigators need to know about, is *talking to witnesses*. And you need to talk to the complaining... the complaining person, Who saw this? Who else might know about it? Who can we talk to? And then *you need to talk to these people . . .*" (emphasis added).

A full transcript of *Sexual Harassment Law and You* is available at http://the-orbit.net/lousycanuck/2014/02/08/ftbcon2-sexual-harassment-law-and-you-with-full-transcript-ftbcon/.

29. Defendant not only failed to adhere to any of these standards before declaring Plaintiff guilty of sexual harassment, but refused to do so when specifically asked to in order to avert a lawsuit (see "Affidavit of Dr. Richard Carrier Concerning Paul Myers," attached hereto marked **Exhibit 2**).

30. Demonstrative of Defendant's malice or reckless disregard, the acts or practices described herein have been previously determined by the Reporters Committee for Freedom of the Press (the "Committee"), an association assisting journalists, to violate the standards for journalist integrity, to wit:

> "Do not let your opinion about whether someone is a public figure or official color your decision to verify the accuracy of a story. Juries do not respond favorably to reporters who fail to confront their subjects with defamatory information and provide them with an opportunity to comment."

31. Defendant committed said violations after the Committee made available for public inspection the *First Amendment Handbook* (2011), available at http://www.rcfp.org/rcfp/orders/docs/FAHB.pdf.

32. The foregoing policies and practices, though known to Defendant, were willfully disregarded as to Dr. Carrier, and go to Defendant's ill will or reckless disregard for truth or falsity. Defendant was willfully blind as to the Plaintiff, in light of Defendant's experience and responsibility as a journalist, and their involvement presenting, publishing, and attending the foregoing presentation.

33. Demonstrative of Defendant's malice or reckless disregard, Defendant sent an email to Plaintiff on June 21 (attached hereto marked **Exhibit 3**), shortly after publishing the "Blog Post," admitting privately that he did not believe the only woman who, by that time, had publicly claimed to be sexually harassed by the Plaintiff (which person is Amy Frank-Skiba, the subject of a concurrent lawsuit by the Plaintiff in the District of Arizona), stating her accusations were "not particularly believable," and furthermore, admitted to not having investigated or verified any other stories told him before he published.

34. Demonstrative of Defendant's malice or reckless disregard, later that same day (June 21, 2016), Dr. Myers and Dr. Carrier arranged and held a conversation by telephone, during which Myers informed Plaintiff that, despite Plaintiff's reasonable request to the contrary, neither Myers nor the FreethoughtBlogs ethics committee would at any point in its investigation tell the Plaintiff who was accusing him or what specifically they were accusing him of, or where or when (see herein, Exhibit 2), making a defense against the allegations impossible, thereby demonstrating Defendant's deliberate disinterest in knowing the truth of his published allegations.

35. Demonstrative of Defendant's malice or reckless disregard, during the course of Plaintiff's lawsuit against him, on June 28 of 2018, Defendant published a YouTube video entitled "What's new in the Richard Carrier Saga?" (viewable as of April 2019 at https://www.youtube.com/watch?v=n69yleebaUc), in which Defendant made false statements that conceal this evidence of actual malice; which efforts evince guilt.

36. In particular, in said video at or around minute 5, Defendant falsely claims Plaintiff *was* informed of what he was being accused of and by whom in the course of the aforementioned FreethoughtBlogs investigation, and offers as the only evidence of that the publication of Amy Frank-Skiba's GoFundMe® campaign, which was in fact published July 30, 2016, over a month *after* Plaintiff was forced to remove himself from that investigation *because* Defendant refused to provide Plaintiff any such information. By making a knowingly false statement about his FreethoughtBlogs investigation, which was in fact terminated for inability to ascertain the truth of any allegation published by Myers owing to his refusal to provide any information regarding the allegations sufficient to render them investigable, Dr. Myers deliberately misled the public. This demonstrates Defendant was aware that his admitting the truth (that he refused to provide Plaintiff the information that he was now falsely claiming he had provided) would evince actual malice, necessitating a public lie to conceal that fact; which evinces guilt.

37. Demonstrative of Defendant's malice or reckless disregard, through counsel, Defendant made and endorsed outrageously false statements about the Plaintiff in respect to his friend and girlfriend (*Carrier v. FreethoughtBlogs*, "Defendants' Brief in Support Following Jurisdictional Discovery," Dkt. 42, p. 10, personal names here redacted), to wit:

> "Carrier neglects to mention in the fact that the Executive Director of Camp Quest (***) and the Executive Director of the SSA (***) are a married couple, and that Carrier engaged in an extramarital sexual affair with *** for several years. ... Yes, that's correct – Carrier was having sex with a married woman, and an organization led by her husband now has a chilly relationship with him – but somehow, that is the Defendants' fault. The narcissism in this position is simply mind-boggling. Carrier does not speculate in his Complaint as to why after he cuckolded a husband, that husband may not want to hire him for future work; or why his former lover may not want to hire him after he admitted to her that he had made a sexual advance toward a younger female student at one of her organization's events. For Carrier to speculate that the Defendants' statements caused him to lose potential work from organizations run by his lover and her husband, well it simply boggles the mind."

38. With the aforementioned statement Defendant maliciously and lasciviously alleged one of the Plaintiff's girlfriends was cheating on her husband with him, that her husband avenged himself on the Plaintiff because the Plaintiff "cuckolded" him, and that she left the Plaintiff because the Plaintiff pursued younger women. In fact, no evidence of any of this was produced, and as abundant evidence will show, all three concerned (Plaintiff, his girlfriend, and her husband) were and are polyamorous, their relationship was fully known and approved by both the Plaintiff's girlfriend and her husband, she and the Plaintiff never broke up and are still together, the Plaintiff and her husband remain close friends, Plaintiff had a good relationship with the SSA and Camp Quest until the Defendant published their defamation, and none of what the Defense alleged happened.

39. The Defendant's repeatedly making knowingly false statements about Plaintiff, with the explicit intent of defaming his reputation and portraying him as a liar and harasser of women who has even been rejected by his lovers and friends, evinces a pattern demonstrating actual malice. Though the aforementioned statement made in a court motion through counsel, which would be knowingly false and thus defamatory in any other context, is as a matter of law exempt from claims of defamation as are all statements made in court proceedings, it is nevertheless admissible as evidence of Defendant's ongoing dishonesty and malicious disregard of the truth in furtherance of his original aim to defame the Plaintiff, as begun with his June 21, 2016, "Blog Post."

### *Evidence of Effect*

40. As of August 15, 2016, Defendant's June 21 article had garnered 132 comments. In substantial numbers readers agreed, based on untrue statements, that allegations of sexual harassment, "persistent" sexual behavior "in defiance of specific requests that he cease," a crime involving moral turpitude, as well as statements concerning Dr. Carrier's professional acumen and character, were true.

41. Defendant's defamatory statements above have been reported, republished, repeated, and/or re-broadcast throughout the United States and worldwide, via social media, blogs, and other media, and continue to be republished, repeated, and re-broadcast.

42. As of August 15, 2016, a Google® Internet search using the term Richard Carrier produced 48,500,000 results, including news articles and blogs that repeat these defamatory statements and accusations, and otherwise report and comment on them.

43. Since the Defendant's statement was published, Plaintiff has suffered documented losses of business opportunities and has been frequently rejected for sales and speaking engagements, and organizations both national and local fear being associated with him owing to the negative press the Defendant's allegations bring. Plaintiff has also been subject to ridicule, censure, and rejection by numerous individuals owing to their mistaken belief the allegations are true.

44. By falsely claiming, without privilege, that Dr. Carrier committed sexual harassment as well as other lascivious acts, the Defendant intended to inflict a vicious, deliberate, and calculated attack on Dr. Carrier's character, reputation, and professional standing, and to turn the academic and skeptic communities against Dr. Carrier, and to cause them to have contempt, scorn, disgust, and hatred for him, and to hold him in the lowest possible regard.

45. The Defendant's statements stigmatize Dr. Carrier as guilty of serious criminal offenses involving moral turpitude, allege behavior incompatible with the proper conduct of his business and trade, and injure his professional standing.

46. At the time his intentional false statements were made, the Defendant knew of Dr. Carrier's valid business expectancies described above.

47. At the time they were written, Defendant knew his statements to be false or were made with reckless disregard as to truth or falsity.

## TOLLING THE STATUTE OF LIMITATIONS IN MINNESOTA

48. Though Plaintiff is filing a claim of defamation in Minnesota after the statute of limitations in Minnesota has run, law and precedent provide exceptions to be made, by an "equitable tolling" of the statute, and thus extension of that required time, when a plaintiff has nevertheless followed due process in a timely manner.

49. Plaintiff's prior counsel has already summarized the law and basis warranting such relief in Plaintiff's case (*Carrier v. FreethoughtBlogs*, Docket 31, "Motion for Miscellaneous Relief"), establishing the Plaintiff meets all the conditions normally warranting equitable tolling (per *Dixon v. Gonzales*, 481 F.3d 324, 331), including satisfying the Ohio saving statute (Ohio Revised Code § 2305.19(A)), which allows Plaintiff to re-file a claim dismissed without prejudice within one year of its dismissal (a plaintiff "may commence a new action within one year after the date of…the plaintiff's failure otherwise than upon the merits," *Ibid.*).

50. Ohio statute would therefore allow Plaintiff to re-file his claim within one year of 14 November 2018, the date of the Federal Court ruling on Plaintiff's jurisdiction (*Carrier v. FreethoughtBlogs*, Docket 43) resulting in "the plaintiff's failure otherwise than upon the merits."

51. As Plaintiff's action began in and was dismissed by a Federal court in Ohio (and not a State court), the Ohio statute establishing Plaintiff's right to re-file in an acceptable jurisdiction should reasonably apply even in the Federal court of another state if that other state has an overlapping statute conferring the same right; particularly given Rule 3 of the Federal Rules of Civil Procedure, which states that "a civil action is commenced by filing a complaint with the court."

52. Minnesota law holds that "if the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period" (Minn. Stat. 541.32; cf. Minn. Stat. 541.31). As just described, Ohio law permits a 1 year tolling of the statute of limitations in this Plaintiff's case, and termination of Plaintiff's case without prejudice in Federal court occurred on 14 November of 2018, granting the Plaintiff until at least November 13 of 2019 to re-file in Minnesota. Plaintiff has satisfied that requirement.

53. By delivering summons to the Defendant in Minnesota in 2016, Plaintiff has likewise satisfied the Minnesota Rules of Civil Procedure in dating the commencement of an action to within the statute of limitations in Minnesota (Minn.R.Civ.P. 3.01(b) and Minn. Stat. 541.07(1)).

54. Defense's opposing brief to tolling the statute (*Carrier v. FreethoughtBlogs*, Docket 32, "Defendants' Opposition to Plaintiff's Motion to Apply the Doctrine of Prospective Equitable Tolling") stated no legally valid reasoning for not tolling the statute of limitations, whether in Ohio or Minnesota.

55. It is in the interests of justice that a Plaintiff have a proper venue for the pursuit of valid claims; the Plaintiff both notified Defendant of his intent to sue and filed suit in a timely manner as would have satisfied the requirements of law in Ohio or Minnesota; throughout the adjudication of the filing in Ohio Defendant was given ample notice and opportunity to gather evidence for the case; and Plaintiff made good-faith arguments for the appropriateness of a single Ohio venue for a lawsuit encompassing defendants across multiple states targeting a plaintiff in Ohio (see briefs in opposition to the motion to dismiss for lack of jurisdiction, *Carrier v. FreethoughtBlogs*, Docket 17 & 27).

56. Other questions of law or fact are beside the point of whether those questions of law or fact deserve review in a proper venue. They therefore cannot themselves be legal grounds for denying the Plaintiff an equitable tolling of the statute of limitations for the very purpose of having those questions of law and fact adjudicated.

57. Plaintiff filed suit against the Defendant in Federal Court within the 2 years required by Minnesota statute (Minn. Stat. 541.07(1)) and has now re-filed that claim within the 1 year allowed by Minnesota statute (Minn. Stat. 541.32 in conj. with Ohio Revised Code § 2305.19(A)).

58. No aspect of his case was found by any court to be conducted in bad faith. Consequently no "bad faith" argument can sustain an objection to continuing a case already begun in a timely manner in Ohio now in Minnesota as required by law and judicial instruction. Nor has any "abuse of discretion" been demonstrated. Nor can any allegation of negligence prevail, as the Plaintiff has been anything but negligent in adherence to established procedure in this matter. Plaintiff has met all the required and expected conditions meriting a tolling of the statute, so that the case begun in Ohio may now be continued in Minnesota as instructed.

59. In their opposing brief, Defense counsel cited several cases as if such cases argued in favor of disallowing a tolling of the statute in Plaintiff's case. None support any such conclusion. Neither *Archer v. Sullivan County*, 1997, nor *Cada v. Baxter Healthcare*, 1990, establish any grounds for declaring "promiscuous" a tolling of the statute in the present case. And *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 86, 96 (1990) explicitly states "Federal courts have typically extended equitable relief only sparingly in suits against private litigants," and yet "allowing tolling where the claimant has actively pursued his judicial remedies by filing a defective pleading," which is precisely the circumstance of the Plaintiff.

60. Accordingly, Plaintiff should enjoy a trial of the facts in this pending case, now in the proper venue, which according to judicial instruction is Minnesota.

___

___

### IV. Relief

Plaintiff appeals for relief as follows…

**COUNT ONE**
**DEFAMATION PER SE**

61. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

62. Defendant's demonstrably false statements, without privilege, impute to the Plaintiff serious criminal and moral offenses involving moral turpitude. The publication and republication of their statements of and concerning Dr. Carrier proximately caused general and special damages to the Plaintiff.

63. Defendant knew, anticipated, foresaw, and intended that their statements, with actual malice, made either with knowledge that they were false, or with reckless disregard of whether they were false or not, would be read by persons throughout the United States and the world and would damage the personal and professional reputation of the Plaintiff.

64. The Defendant's statements here identified as the "Blog Post" have adversely affected the Plaintiff's business and profession and personal life, including but not limited to his scholarly credibility, speaking, teaching, writing, and publishing opportunities, book sales, and blog income, and social and romantic life, and caused psychological and emotional trauma and suffering which is continuing.

**COUNT TWO**
**DEFAMATION PER QUOD**

65. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

66. Defendant's demonstrably false statements in the "Blog Post", without privilege, impute to the Plaintiff behavior incompatible with the proper conduct of his business and trade, and injure his professional standing.

67. Defendant's statements referred to herein have caused, are causing, and will cause the Plaintiff to suffer injury to his professional standing, to his reputation, and good name; and, Defendant's statements have held and will continue to hold the Plaintiff up to public scandal and ridicule.

68. Defendant's statements of and concerning Dr. Carrier were made with actual malice, made either with knowledge that they were false, or with reckless disregard of whether they were false or not, calculated to expose the Plaintiff to public scorn, hatred, and ridicule.

69. By such published statements, Defendant did injure the Plaintiff's reputation within his business and professional circles nationally and worldwide. The publication of the statements proximately caused general and special damages to the Plaintiff, adversely impacted the Plaintiff's scholarly credibility and professional standing, and opportunities for writing, teaching, speaking, book sales, and blog income, and caused the Plaintiff emotional and psychological trauma and suffering which is continuing.

**COUNT THREE
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

70. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

71. At all times herein, Defendant acted intentionally and unreasonably in publishing and republishing false statements in the "Blog Post," maliciously, with hate, spite, or ill will toward Dr. Carrier, or with such reckless disregard of whether they were false or not, when Defendant knew or should have known that the Plaintiff's emotional distress would likely result.

72. Notwithstanding the Plaintiff's requests that Defendant cease and desist immediately from their publishing of those statements, Defendant failed and refused to do so.

73. Defendant's conduct was intentional and malicious, and done for the purpose of causing, or was known by Defendant to likely cause the Plaintiff humiliation and embarrassment, mental anguish, damage to his reputation and career, and severe emotional distress, and was done with wanton and reckless disregard for the consequences to the Plaintiff.

74. As a proximate result of the aforementioned wrongful conduct, the Plaintiff has suffered substantial monetary damages, including damages to his personal and professional reputation and career, and substantial emotional distress, anxiety, and worry.

75. Unless and until enjoined and restrained by order of this Court, Defendant's continued acts will cause the Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages. By reason of the foregoing, the Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the publication and republication of the false and defamatory publications herein described.

**COUNT FOUR
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

78. The Plaintiff adopts, re-alleges, and incorporates by reference all allegations of the foregoing Paragraphs, as if they were set forth in full herein and further alleges the following matters.

79. At all times herein, Defendant acted negligently and unreasonably in publishing and republishing false statements in the "Blog Post," maliciously, with hate, spite, or ill will toward Dr. Carrier, or with reckless disregard of whether they were false or not. In so doing, Defendant acted beyond reasonable bounds of decency, and negligently inflicted emotional distress upon the Plaintiff.

80. Notwithstanding the Plaintiff's requests that Defendant cease and desist immediately from their publishing of those statements, Defendant failed and refused to do so.

81. Defendant's conduct was negligent, and proximately caused the Plaintiff to suffer substantial humiliation and embarrassment, mental anguish, damage to his reputation and career, and severe emotional distress, and was done with wanton and reckless disregard for the consequences to the Plaintiff.

82. As a proximate result of the aforementioned wrongful conduct, the Plaintiff has suffered substantial monetary damages, including damages to his personal and professional reputation and career, and substantial emotional distress, anxiety, and worry.

83. Unless and until enjoined and restrained by order of this Court, Defendant's continued acts will cause the Plaintiff severe and irreparable injury which cannot adequately be compensated by monetary damages. By reason of the foregoing, the Plaintiff is entitled to preliminary and permanent injunctive relief enjoining the publication and republication of the false and defamatory publications herein described.

---

WHEREFORE, on the preceding basis, the Plaintiff, Richard Carrier, Ph.D., respectfully prays that the Court:

A. Assume jurisdiction of this case;

B. For Count I, enter a judgment in favor of the Plaintiff and against Defendant for compensatory damages in the amount of two hundred and fifty thousand dollars ($250,000), punitive damages in the amount of two hundred and fifty thousand dollars ($250,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable;

C. For Count II, enter a judgment in favor of the Plaintiff and against Defendant for compensatory damages in the amount of two hundred and fifty thousand dollars ($250,000), punitive damages in the amount of two hundred and fifty thousand dollars ($250,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable;

D. For Count III, enter a judgment in favor of the Plaintiff and against Defendant for compensatory damages in an amount in excess of Fifty Thousand Dollars ($75,000), and for punitive damages in an amount in excess of Fifty Thousand Dollars ($75,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable;

E. For Count IV, enter a judgment in favor of the Plaintiff and against Defendant for compensatory damages in an amount in excess of Fifty Thousand Dollars ($75,000), and for punitive damages in an amount in excess of Fifty Thousand Dollars ($75,000), plus both pre-judgment and post-judgment interest, the costs of this action, and for such other and further relief as this Court finds just and equitable;

F. And for any or all Counts enter a judgment for preliminary and permanent injunction against Defendant and all persons acting under their control, from any and all activity that would cause the publication and republication of the false and defamatory statements, in any and all formats, including all electronic and physical media.

The Plaintiff hereby requests a trial by jury on all triable issues, pursuant to Fed. R. Civ. P. 38(b).

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Date of signing: 27 APRIL 2019

Signature of Plaintiff

Printed Name of Plaintiff RICHARD C. CARRIER