UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHARD C. CARRIER, Ph.D., an individual,<br><br>Plaintiff,<br><br>v.<br><br>PAUL Z. MYERS, Ph.D., an individual,<br><br>Defendant. | Case No.: 0:19-CV-01152-PJS-LIB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

Defendant Paul Z. Myers, Ph.D., ("Defendant") hereby moves this Court to dismiss the Plaintiff's Complaint in its entirety. Plaintiff has failed to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's Complaint is time-barred on its face. In addition, Dr. Myers is not liable to Plaintiff Richard Carrier for any alleged defamatory statement.

## FACTUAL BACKGROUND

Plaintiff Dr. Richard Carrier, Ph.D., alleges that Defendant Dr. Paul Z. Myers, Ph.D., defamed him in a blog post. Significantly, Plaintiff admits that he is a public figure who is "well-known to the public" as a lecturer, teacher, and author of several notable works.[1]  See Complaint, Dkt. No. 1, at p. 4,

---

[1] A public figure Plaintiff must demonstrate actual malice, instead of mere negligence, to prevail on a claim of defamation. *See New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-280 (1964); *see also Stepnes v. Ritschel*, 771 F. Supp. 2d 1019, 1043 (D. Minn. 2011) ("[P]laintiffs who are

¶14.  Dr. Carrier holds a Ph.D. in the history of philosophy and his teachings focus on atheism, feminism, and "secularism."  *Id*. at pp. 4-5, ¶¶18-19.  He professes, in his Complaint, to be a practicing polyamorist.  *Id*. at p. 5, ¶19.  He raises this strange fact in his Complaint because it appears to be his excuse for engaging in multiple acts of sexual misconduct, the discussion of which he prefers to censor through this lawsuit.[2]

Carrier admits that he engaged inappropriate behavior with young students who attend his lectures.  However, now that he has been criticized for his conduct, he seeks to censor discussion of that conduct.  This is not a simple case of "she said, he said." Carrier admits that he engaged in this kind of conduct – he just does not want anyone criticizing it; he finds his conduct to be justified.

---

public officials or public figures must prove with clear and convincing evidence that the defendant acted with actual malice when making the statement."(citations omitted.))

[2]  Dr. Myers passes no judgment on whatever Carrier's sexual practices may be in the privacy of his own home.  However, Dr. Myers does have a right to expect that Carrier will refrain from inappropriate activity with young students at conferences, when that is one of the clearly enumerated rules at those conferences.  Ultimately, this case never would have come about, had Carrier followed these simple and reasonable rules.  Carrier himself confesses to violating these rules.  See **Exhibit 1**, Deposition of Richard Carrier (Carrier Dep.) at p. 45 at ¶ 1-20. Dr. Carrier's deposition transcript is part of the public record and its authenticity is not disputed.  See *Carrier v. FreethoughtBlogs Network et al.*, 2:16-cv-00906-MHW-EPD (S.D. Ohio 2016) at Dkt. No. 41.

For example, he admitted under oath that he sexually propositioned a young student.[3] He also admitted that he does not think there is much of a difference between asking someone on a date and asking someone to have sex with him.[4] And, he has admitted (by accident) that he hit on other students after his talks,[5] violating the Secular Student Alliance's (SSA) policies regarding engaging with young students, a policy he admits he disregarded.[6]

However, he now sues Dr. Myers in this action because Dr. Myers said that he read multiple published reports of Carrier's conduct – conduct that Carrier admitted to under oath. So, Carrier admits that it happened. Myers wrote that he was aware that it happened. So how can Carrier sue for defamation?

Carrier lost his membership to the Secular Student Alliance Speakers' Bureau because he admitted that he broke their explicit policy regarding hitting on young students. Yet, Carrier refuses to take responsibility for his actions, and wishes instead to blame Dr. Myers for simply saying that there were multiple reports of Carrier's misconduct.

---

[3] *See* Carrier Dep. at 82, ¶12-15, where he states that he asked the student if, "you are interested in me, you are welcome to ask me out in the future sometime."

[4] *See* Carrier Dep. at 37, ¶ 8-15.

[5] *See* Carrier Dep. at 84-85, wherein he admits that he thought a different student complained about his sexual advances to the SSA.

[6] *See* Carrier Dep. at 96, wherein he admits that he broke SSA's explicit policy against hitting on students. Meanwhile, he claims that Dr. Myers is the cause of his relationship with SSA souring. *See* Carrier Dep. at 70, ¶2-4.

According to Carrier's allegations, on or about June 21, 2016, Dr. Myers allegedly wrote a blog post entitled "Richard Carrier's blog". *See id.* at ¶¶6, 20, & 21, and Complaint, Exhibit 1. Plaintiff claims that the blog post was false and defamatory. He objects to the statement that he "engaged in 'persistent' sexual behavior 'in defiance of specific requests that he cease.'" Complaint at ¶22. The full, unedited sentence reads "We now have several first-hand reports of persistent, obnoxious sexual behavior in defiance of specific requests that he cease." *Id.* at ¶20 and Complaint, Exhibit 1.

Carrier admits that he engaged in behavior that a reasonable person would call "obnoxious sexual behavior." Two women did, indeed, publish statements regarding Carrier's sexual harassment prior to Dr. Myer's blog post. There we find at least two first-hand reports of persistent obnoxious sexual behavior.

Carrier alleges that the two women did not specifically write that he engaged in sexual harassment "in defiance of specific requests that he cease." *See* Complaint at ¶ 25. However, Carrier omits from his complaint in this suit that a third woman also published an article regarding first-hand reports of Carrier's sexual harassment prior to Dr. Myers' post which specifically states: "*Both [women] have been on the receiving end of Carrier's unwanted interest. In both cases, he met their polite deferral of his interest with more blunt expressions of interest.*" *See Carrier v. Freethought Blogs Network, et al.*, Case No. 2:16-cv-00906 (S.D. Ohio) ("Ohio Suit") at Dkt. No. 1, *Exhibit 2*, attached as Exhibit 5. Carrier knew that Dr. Myers

reported on these allegations because Carrier unsuccessfully sued the writer who published this article in that previous action Carrier filed in Ohio federal court.  *See id.*  Carrier omitted this fact from his Complaint in this action despite being well aware of this fact.  Dr. Myers merely wrote about previously published, first-hand allegations of sexual harassment by Carrier.

Carrier filed the Ohio Suit on September 20, 2016.  *See id.*  Among the seven defendants in that litigation was Dr. Myers.  *See id.*  Dr. Myers and the other defendants moved to dismiss on December 1, 2016 for lack of personal jurisdiction.  *See Ohio Suit*, at Dkt. No. 10.  Following jurisdictional discovery, on November 14, 2018, the Southern District of Ohio granted Dr. Myers's motion and dismissed the action.  *See Ohio Suit,* at Dkt. No. 43.

## DISCUSSION

### 1.0    Legal Standard

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court may also consider public records and documents embraced by the pleadings without converting a motion to dismiss into a summary-judgment motion."  *Id. citing Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).  The facts pled in the Complaint and judicially noticeable documents and records combine to show that Plaintiff's claim is not at all legally plausible.

## 2.0   Analysis

### 2.1   The Claim is Time-Barred

Plaintiff acknowledges that this Complaint was filed outside the two-year statute of limitations recognized in Minnesota. Complaint at ¶57 (citing Minn. Stat. 541.07(1)). The Complaint is time-barred on its face; the alleged defamation occurred in July 2016 and Carrier filed this action in April 2019. In Minnesota, defamation claims, like most non-contract based claims, are subject to a two-year statute of limitations. Defamation actions are subject to a two-year statute of limitations. *See* Minn. Stat. § 541.07(1).

"The statute [of limitations] begins to run when the cause of action accrues and the courts have no power to extend or modify periods of limitation provided therein. When once it begins to run, it will not cease to do so by reason of any event not within the saving of the statute." *Weston v. Jones*, 160 Minn. 32, 36, 199 N.W. 431, 433 (1924)(internal citation omitted).

Minnesota has a saving statute, Minn. Stat. 541.18. The dismissal of the Ohio Suit without prejudice, however, does not fall within its ambit. "Dismissal without prejudice operates to leave the parties as if no action had been brought at all. Following such dismissal the statute of limitations is deemed not to have been suspended during the period in which the suit was pending." *Anderson v. H-Window Co.*, C9-98-1103, 1999 Minn. App. LEXIS 171, at *5 (Ct. App. Feb. 23, 1999)(citing *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1194 (8th Cir. 1976) and *Collins v. Cochrane & Bresnahan, P.A.*, 415 N.W.2d 715, 717 (Minn. App. 1987)).

Carrier offers no valid basis under Minnesota law why his current Complaint is timely. Instead, he argues that Ohio law, including its one-year saving statute, should apply. *Id*. (citing Minn. Stat. 541.32 and Ohio Rev. Code §2305.19(A)). Plaintiff is wrong as a matter of law.

Minn. Stat. 541.32 states:

> If the statute of limitations of another state applies to the assertion of a claim in this state, the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period, but its statutes and other rules of law governing conflict of laws do not apply.

The statute of limitations of Ohio and its tolling rules do not apply to extend Plaintiff's time in this Minnesota action.

In diversity cases, this Court applies Minnesota's choice of law rules. *See Nw. Airlines v. Astraea Aviation Servs.*, 111 F.3d 1386, 1393 (8th Cir. 1997). "The first step in Minnesota is to consider whether a conflict actually exists between the different states and whether there would be constitutional problems with either law." *Id. citing Jepson v. General Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994). Here, there is an actual conflict—as set forth above, Minnesota's saving statute does not privilege a plaintiff to refile a stale case if it was dismissed previously, even though it was without prejudice if that dismissal occurs after the Minnesota statute runs.

Because a conflict exists between Minnesota and Ohio law, the next step is to determine whether there would be constitutional problems with either law. There is a constitutional problem with applying Ohio law because Dr. Myers lacks sufficient minimum contacts with Ohio. In the prior

Ohio action, the Court found that Carrier could not show sufficient minimum contacts by the defendants, including Dr. Myers, with Ohio, to comport with the constitutional due process exercise of personal jurisdiction, finding:

> Defendants made allegedly defamatory statements outside of Ohio, relating to conduct that occurred outside of Ohio, about an individual who moved to Ohio a few weeks before the statements were made.  In sum, there is no sufficiently substantial connection between any of the Defendants and Ohio to make the exercise of personal jurisdiction reasonable.

*Carrier v. FreethoughtNetworks Blog, et al.*, Case No. 2:16-cv-00906 (S.D. Ohio Nov. 14, 2018), slip op. at 26.

It would be arbitrary and fundamentally unfair to subject Dr. Myers to Ohio law, where it was already determined that he lacks significant contacts with that state.  In *Nw. Airlines,* the Eighth Circuit found "[t]he substantive law of either state could constitutionally be applied because they each have significant contacts with the case, so that choice of either state's laws would be 'neither arbitrary nor fundamentally unfair.'" 111 F.3d at 1394, *citing Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981).  Why should a Minnesota resident, with no contacts with Ohio, with no notice that he could be hauled into court in Ohio, who prevailed in a 12(b)(2) motion in Ohio, now be subject to Ohio law?  Because applying Ohio law would be arbitrary and fundamentally unfair, the Court should apply Minnesota law with respect to the statutes of limitations.

Assuming *arguendo* Ohio law could constitutionally be applied, Minnesota law should nonetheless be applied. Minnesota choice of law

determinations look to the following factors: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Nw. Airlines, supra* at 1393 *quoting Jepson, supra* at 470. As to the first factor, the place where the statement is made, here Minnesota, leads to predictability. *Compare Nw. Airlines, supra* at 1394. Similarly, as to the second factor, the courts look at the contacts of the state with the issue and the risks of forum shopping—Ohio was previously found to lack a significant connection whereas, as in *Nw. Airlines*, the statements were made in Minnesota by one of its citizens. *Id*.

With respect to the third factor, "[s]implification of the judicial task is relevant mainly for procedural issues. If a procedural rule is implicated, it may be better to apply the forum rule." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 590 N.W.2d 670, 674 (Minn. Ct. App. 1999). A statute of limitations is procedural in this analysis. *See Christian v. Birch*, 763 N.W.2d 50, 58 (Minn. Ct. App. 2009). As to the fourth factor, Minnesota's interest, "[s]tatutes of limitations serve dual purposes: 'the repose of the defendant and the fair and effective administration of justice.'" *Hempel v. Creek House Trust*, 743 N.W.2d 305, 311 (Minn. App. 2007) (*quoting Dalton v. Dow Chem. Co.*, 280 Minn. 147, 153 n.2, 158 N.W.2d 580, 584 n.2 (1968)). Minnesotans live their lives in the comfort that even if they may have uttered a defamatory word in the past, that past stops haunting them after two years.

Minnesota's own saving statute, Minn. Stat. §541.18, only saves actions where a judgment for a plaintiff is reversed on appeal. *See, generally, Kulinski v. Medtronic Bio-Medicus*, 577 N.W.2d 499, 502 (Minn. 1998) (discussing saving statute); *accord Fish Tale Credit LLC v. Anderson*, 2017 U.S. Dist. LEXIS 99604, at *17 n.8 (D. Minn. June 6, 2017) ("this statute—by its plain language—does not apply in the facts present here: there has been no prior judgment recovered and no arrest or reversal of that prior judgment.") Minnesota specifically chose not to extend the statute of limitations where a plaintiff chose to file in the wrong court first and was dismissed outright.[7] A Minnesotan is offered no repose if a plaintiff can continue to harass him with litigation in court after improper court, because an Ohio statute arguably says the plaintiff did not lose the right way the first time. It does not serve Minnesota's interest to encourage plaintiffs to file improper claims in Ohio first, thus forcing Minnesotans to endure years of litigation to get the case thrown out, only to face further legal harassment after the statute of limitations has run. Thus, as the first four factors indicate

---

[7] The Minnesota Supreme Court has also considered, additionally, that the savings statute might not apply where:

> the plaintiff willfully or negligently brought the original action in a court without jurisdiction; where the court in which the original action was brought lacked personal jurisdiction over the defendant (by reason of the plaintiff's neglect); or where the plaintiff failed to comply with the savings statute's requirements in instituting the second action.

*Kulinski*, 577 N.W.2d at 503 n.5 (internal citations omitted). Here, Carrier willfully brought the action in Ohio, which lacked personal jurisdiction over Dr. Myers, thus cautioning against any such application of a saving statute.

application of Minnesota law, it is the better rule of law.  To rule to the contrary would encourage parties to first file cases out-of-state against Minnesotans; soften them up with a few years' worth of legal expenses; and then bring on the correct jurisdiction years later.  No; Minnesotans should be able to take comfort in the fact that if a plaintiff wishes to waste time with a lawsuit that does not comport with due process, he wastes his own time – and not the Minnesotan's time.

Plaintiff otherwise invokes the doctrine of "equitable tolling", citing *Dixon v. Gonzales*, 481 F.3d 324 (6th Cir. 2007).  Complaint at ¶49.  *Dixon,* a Sixth Circuit case, is inapplicable; Minnesota state law governs.  *See Rassier v. Sanner*, 2017 U.S. Dist. LEXIS 196939, at *9 (D. Minn. Nov. 30, 2017).  In Minnesota, equitable tolling applies only when (a) plaintiff was diligently pursuing his claim during the limitations period and a state actor or other "paramount authority" prevented the filing; (b) the claim was concealed from the plaintiff by fraud; or (c) some extraordinary circumstance beyond his control prevented him from meeting the deadline.  *Sanchez v. State*, 816 N.W.2d 550, 561 (Minn. 2012).  None of that happened here.

Here, though Carrier did pursue his claim during the limitations period, he was not prevented from filing on time in Minnesota by anything.  He most certainly was not so prevented due to a state actor or other paramount authority.  He chose to misfile in Ohio and continued to litigate there, despite being well-advised of the impropriety of filing there.  He was well aware of the jurisdictional and limitations issues before the Minnesota time limit ran.  *See* Exhibit 2, (Motion to Apply the Doctrine of Prospective

Equitable Tolling filed in Ohio case, Dkt. No. 31). He should have, at that time, dropped his Ohio case, without prejudice, and then filed it here in Minnesota. Instead, he persisted, and the cost of that persistence was that he now finds himself without a remedy. Neither Plaintiff's lack of legal assistance, nor his personal lack of legal skills, can warrant tolling of the statute of limitations. *See, e.g., Leake-Bey v. Dingle*, CIV 06-3749 JNE/JSM, 2006 WL 3392883, at *5 (D. Minn. Nov. 21, 2006).

There was no fraudulent concealment. In fact, there was no concealment at all. There was no extraordinary circumstance—the choice to litigate in Ohio was fully within his control. Thus, equitable tolling does not apply. In light of the foregoing, the litigation should be dismissed as time-barred.

### 2.2  Plaintiff's Defamation Claims Lack Plausibility

Even if it were not time-barred, Plaintiff's defamation claims fail for lack of factual plausibility because Plaintiff has failed to allege facts plausibly showing that Dr. Myers acted with actual malice in defaming Plaintiff. The claims also fail because the allegedly defamatory statement is true and therefore not defamatory.

#### 2.2.1  Because Plaintiff is a public figure, he must plead that Defendant acted with actual malice.

Plaintiff admits that he is a public figure in his Complaint. He alleges to be a public speaker, worldwide lecturer, and widely published author. Complaint at ¶4. He claims he is "well known to the public throughout the United States and the world", with a "public personality". *Id*. at ¶14. He

cannot make such claims and then evade the conclusion that he is a public figure.

Plaintiff's standing as a public figure is significant because public figures have a higher burden to bring defamation claims. "A public-figure plaintiff must do more than prove falsity to prevail in a defamation claim. Even if the defendant's remarks are proven both defamatory and false, a public-figure plaintiff must also prove by clear and convincing evidence that the defendant acted with actual malice - that is, that the defendant made false remarks with a high degree of awareness of probable falsity, or that the defendant entertained serious doubts as to the truth of his publication." *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001) (internal citation omitted).

Plaintiff has failed to plead any facts suggesting that Dr. Myers acted with actual malice. Indeed, the allegations in his Complaint at best reveal only an allegation of Dr. Myers's purported failure to investigate claims that he then allegedly repeated. The sole allegedly defamatory statement identified by Plaintiff in his Complaint is as follows: "We now have several first-hand reports of persistent, obnoxious sexual behavior in defiance of specific requests that he cease." Thus, the alleged defamatory statement on which Carrier relies states nothing more than Dr. Myers stating that he received reports. Importantly, Carrier does not dispute that Dr. Myers did not receive reports of Carrier's persistent, obnoxious sexual behavior; instead, he faults Dr. Myers for not sufficiently investigating those first-hand reports and only says that those reports made no mention of Carrier's

behavior being in defiance of specific requests to cease.  Complaint at ¶¶24-25.  However, a "failure to investigate alone does not support a finding of actual malice."  *Campbell*, *supra* at 570.  In *Campbell,* the Eighth Circuit reviewed the applicable caselaw, noting as follows:

> In *St. Amant* [*v. Thompson*, 390 U.S. 727 (1968)], the record did not support a finding of reckless disregard for the accuracy of statements even though the defendant had no personal knowledge of the plaintiff's activities, relied solely on an affidavit, failed to verify the information by those who might have known the facts, did not consider whether the statements defamed the plaintiff, and mistakenly believed he was not responsible for the broadcast because he was merely quoting the affiant's words.  390 U.S. at 730.  The Court found that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.  There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id*. at 731.

255 F.3d at 570.  Here, there is nothing to suggest Dr. Myers entertained any, much less "serious," doubts as to the truth of the multiple reports to which Dr. Myers referred in the purportedly defamatory statement.   Thus, there is nothing to suggest the statement regarding the substance of reports received was false, let alone published with actual malice.

### 2.2.2   The allegedly defamatory statement is demonstratively true.

Under Minnesota law, "[t]o be considered defamatory, a statement of fact about a plaintiff must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower him or her in the estimation of the community." *Jones v. Keith*, 2002 U.S. Dist. LEXIS 3365, at *8 (D. Minn. Feb. 25, 2002).   "'Truth … is a

complete defense' to a defamation suit and 'true statements, however disparaging, are not actionable.'" *Osterberg v. Sears*, Civ. No. 03-6000 (RHK/AJB), 2004 U.S. Dist. LEXIS 19093, *8, 2004 WL 2186407 (Dist. MN Sept. 22, 2004) (quoting *Stuempges v. Parke*, Davis & Co., 297 N.W.2d 252, 255, 1980 Minn. LEXIS 1544, 24 A.L.R.4th 132). Plaintiff has failed to assert a claim for defamation because the allegedly defamatory statement is demonstratively true.

When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.), cert. denied, __ U.S. __, 119 S. Ct. 2400, 144 L. Ed. 2d 799, 1999 WL 319349 (U.S. 1999), as well as materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079, 1999 U.S. App. LEXIS 18209, 51 U.S.P.Q.2D (BNA) 1694 (8th Cir. 1999); *see also Levy v. Ohl*, 477 F.3d 988, 990 (8th Cir. 2007) ("In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court is not precluded in its review of the complaint from taking notice of items in the public record.")

The crux of Carrier's claims against Myers involve one statement on a blog post, which says: "We now have several first-hand reports of persistent, obnoxious sexual behavior in defiance of specific requests that he cease." Complaint at ¶¶20-22. However, no liability can attach to this statement

because it is factually true. Myers' statement does not claim personal knowledge of any alleged offenses by Carrier; instead, the statement merely recounts having received "several first-hand reports" of such behavior. Indeed, by the time that Myers posted this statement, a number of first-hand accounts of such behavior had been published. Amy Frank, a defendant in Carrier's original Ohio Suit, published her account of being sexually harassed and assaulted by Carrier in a Facebook post on June 15, 2016. *See* Ohio Suit Dkt. No. 1, <u>Exhibit 4</u>, incorporated by reference in the instant Complaint at ¶25, attached as Exhibit 3. On June 20, 2016, Skepticon, another defendant in Carrier's Ohio Suit stated in a blog post: "While [Carrier] was a featured speaker for many years, we stopped inviting him to speak partly because of his repeated boundary-pushing behavior…" *See* Ohio Suit Dkt. No. 1 at *Exhibit 3*, incorporated by reference in Carrier's instant Complaint at ¶25, attached as Exhibit 4. Dr. Myers' complained of blog post links directly to this Skepticon post in its first paragraph. See Complaint at <u>Exhibit 1</u>. Further, in a post-dated June 20, 2016 on The Orbit, Stephanie Zvan, another defendant in Carrier's Ohio Suit, states that:

> I've spoken to a Skepticon organizer. The pattern there is similar, except that the expressions of sexual interest were repeated, though more deniably after they weren't reciprocated. I've also spoken with two other people who don't wish to come forward publicly. Both have been on the receiving end of Carrier's unwanted interest. In both cases, he met their polite deferral of his interest with more blunt expressions of interest. …
>
> At this point, I have to conclude that Carrier is highly resistant to changing his behavior. He's received plenty of feedback.

> Organizations and individuals have told him that what he's done is wrong. His response is to handwave at irrelevancies.

Ohio Suit Dkt. No. 1, Exhibit 2, attached as Exhibit 5.

At the time Myers published his statement, accounts from numerous sources had all pointed to the fact that Carrier's sexual behavior was both persistent and obnoxious, and that Carrier had defied requests that he cease the offensive behavior. Myers' statement was merely an accurate report of these sources. And, as set forth above, Carrier also testified under oath at his deposition in the Ohio Suit that he sexually propositioned a young student and made advances on other students, in violation of SSA policies. Because the complained-of statement is factually true, Myers is not liable for defamation.

### 2.3   Plaintiff has failed to sufficiently plead a claim for intentional information of emotion distress.

Just as Plaintiff's defamation claim fails for lack of actual malice, Plaintiff's claim for intentional infliction of emotional distress suffers the same deficiency. The "actual malice" standard also applies to claims for intentional infliction of emotional distress. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1119 (8th Cir. 1999).

Plaintiff has otherwise failed to plead a claim for intentional infliction of emotional distress. To prove a claim of intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was (1) extreme and outrageous, (2) intentional or reckless, and (3) caused emotional distress (4) that was severe. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983). As to the first factor, accusations of

misconduct are not "statements that are utterly intolerable in a civilized society" to be deemed outrageous. *Conroy v. Kilzer*, 789 F. Supp. 1457, 1468 (D. Minn. 1992); *see also Price v. Viking Press, Inc.*, 625 F. Supp. 641, 650-51 (D. Minn. 1985) (dismissing claim where accusations included statements about covering up murder, suborning perjury, and physically threatening witnesses). As to the third and fourth factors, Plaintiff nakedly pleads "substantial emotional distress, anxiety, and worry." Complaint at ¶74. This hardly rises to being "severe" emotional distress under Minnesota law. "General embarrassment, nervousness and depression are not in themselves a sufficient basis for a claim of intentional infliction of emotional distress." *Strauss v. Thorne*, 490 N.W.2d 908, 913 (Minn. App. 1992), *review denied* (Minn. Dec. 15, 1992); *accord Hubbard*, 330 N.W.2d at 440 (holding that even allegations of depression, vomiting, stomach disorders, rash, and high blood pressure, without supporting medical evidence, were not sufficiently severe as a matter of law).

Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

### 2.4 Plaintiff failed to allege a plausible claim for negligent infliction of emotional distress.

Plaintiff has failed to plead a claim for negligent infliction of emotional distress. "A plaintiff may recover for negligent infliction of emotional distress when that plaintiff is within a zone of danger of physical impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury." *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn. Ct. App. 1987). Plaintiff does not plead any zone of

danger or physical injury.  Alternately, such a claim may be cognizable to recover for mental anguish due to defamation; however, if the defamation claim does not stand, he cannot assert this type of negligent infliction claim. *See Elstrom v. Indep. Sch. Dist. No. 270*, 533 N.W.2d 51, 57 (Minn. Ct. App. 1995).  As set forth above, the defamation claims fail and, thus, this cause must be dismissed as well.

## CONCLUSION

Plaintiff's claims are time-barred and neither Ohio law nor equitable tolling applies.  In addition, Plaintiff admits that he is a public figure and he has failed to plausibly plead that Dr. Myers's blog post was published with actual malice, and it is otherwise true. Therefore, Plaintiff has failed to state a claim and, accordingly, Plaintiff's Complaint should be dismissed with prejudice.

Dated July 8, 2019

Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Ronald D. Green

Ronald D. Green
(*pro hac vice motion pending*)
**RANDAZZA LEGAL GROUP, PLLC**
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

Troy Hutchinson
(MN License No. 0320420)
**ROCK HUTCHINSON**
120 South Sixth Street, Suite 2050
Minneapolis, MN 55402
Telephone: 612-743-3164

thutchinson@rockhutchinson.com

Attorneys for Defendant
Paul Z. Myers