Richard C. Carrier
134 W. Tulane Rd. Apt. B
Columbus, OH 43202
(510) 932-9536
richard.carrier@icloud.com

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **Richard C. Carrier, Ph.D.**, | : | Case No. **19-cv-1152-LIB** |
| | : | |
| Plaintiff, | : | Magistrate Leo Brisbois |
| | : | |
| v. | : | |
| | : | **PLAINTIFF'S RESPONSE IN** |
| **Paul Z. Myers, Ph.D.**, | : | **OPPOSITION TO DEFENDANT'S** |
| | : | **MOTION TO DISMISS WITH** |
| Defendant. | : | **INCORPORATED MEMORANDUM** |

Plaintiff has already pled both the merits of his case (Complaint, Dkt. 1, ¶1-47; even in respect to actual malice, ¶28-39) and the sound reasoning for allowing equitable tolling to continue this litigation (Ibid., ¶48-60) in a jurisdiction now believed applicable. All of which pleadings Plaintiff here adopts, re-alleges, and incorporates by reference, and to which pleadings Plaintiff adds the following. As to the amount in controversy, Defense has not established "to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal," as required under *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

1

**1. Jurisdiction**

Plaintiff is seeking to resume due process after having sought in good faith to litigate this case in the state of Ohio where he resides and resided and genuinely believed Defendant knew him to reside even before publishing defamatory material about the Plaintiff.[1] Plaintiff cannot be faulted for not knowing the Defendant would *deny* having been informed of Plaintiff's residence in Ohio when Plaintiff himself had directly informed him of that and had publicly and repeatedly announced the fact on Defendant's own blog network,[2] a network of which Defendant was the CEO. In any event Defendant knew of Plaintiff's residence in Ohio when he reiterated and reaffirmed his defamation of Plaintiff in a new publication on June 28, 2018 (as discussed below; **Exhibit 1** and **Exhibit 2** to Affidavit of Richard Carrier, ¶5-6, here attached), so he cannot claim ignorance of possible subjection to Ohio law now.

---

[1] See *Carrier v. Freethought Blogs et al.*, S.D. Ohio 2:16-cv-00906-MHW-EPD (2016), Complaint, Dkt. 1, ¶7, 56-57, referencing a June 26 reaffirmation and re-referencing of Defendant's defamation of Plaintiff by Defendant's blog network under Defendant's direction even after being informed by phone of Plaintiff's residence in Ohio on June 21, per *Carrier v. Freethought Blogs et al.*, Dkt. 41, p. 92, ¶12-17. Additionally, Plaintiff very publicly announced his move to Ohio multiple times before June of 2016 on Defendant's own blog network (see footnote 2).

[2] See *Carrier v. Freethought Blogs et al.*, Brief in Opposition to Defendants' Motion to Dismiss, Dkt. 17, p. 3, 5, 11-12, 16.

Defense cites *Anderson v. H-Window Co.*, C9-98-1103, 1999, but that opinion is unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (1998). It predates passage of the very law Defense is trying to apply it to (Minn. Stat. 541.32 was passed into law in 2004, c 211 s 3). Which is why neither that nor any of the cases it cites in turn (also cited by the Defense, e.g. *Kulinski* 1998) address Minnesota's statute 541.32: because it didn't exist when they were decided.

Minnesota law has now superseded and replaced Defense's cited precedents by declaring "if the statute of limitations of another state applies to the assertion of a claim in this state, **the other state's relevant statutes and other rules of law governing tolling and accrual apply in computing the limitation period**" (Minn. Stat. 541.32; cf. Minn. Stat. 541.31). None of the arguments Defense makes against this statute's plain wording hold any discernible logic or validity. Accordingly my pleading for the applicability of the Ohio saving statute holds uncontested (Complaint, Dkt. 1, ¶48-60). Defense admits "the Court should apply Minnesota law with respect to the statutes of limitations." Minnesota Statute 541.32 is Minnesota law. And it declares that Ohio's statutes and other rules of law pertaining apply in the instant case. They are thereby subsumed by and effectively become Minnesota law.

Defense argues *Rassier* not *Dixon* is applicable, but Plaintiff cited *Dixon* as interpretive of Ohio law (Complaint, Dkt. 1, ¶49); insofar as *Rassier* applies to Minnesota law, it says essentially the same thing as *Dixon*, that "Even if a claim has accrued and the statute of limitations has facially run, Courts sometimes find that the statute of limitations was tolled for the sake of equity," and "State law governs the tolling of the statute of limitations" (*Rassier v. Sanner*, Civil No. 17-938 (DWF/LIB) (D. Minn. Nov. 30, 2017)) which would include Minn. Stat. 541.32 and thereby all applicable Ohio law.

Likewise, Ibid., "Minnesota recognizes the doctrine of equitable tolling, which tolls a statute when" a litigant "establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Plaintiff in the instant case has been pursuing his rights diligently and could not foresee losing jurisdiction in the state where he resided when he was defamed and where he had every reason to believe Defendant knew he resided when he defamed him. Even *Sanchez v. State*, 816 N.W.2d 550, 561 (Minn. 2012), states "we have applied tolling only when some factor completely outside the claimant's control prevented him from meeting a statutory deadline," and claimant could not foresee so as to control the outcome of a lawsuit, which he diligently filed and pursued in good faith within statute, being dismissed without prejudice for an unexpected technicality of

whether the Plaintiff could prove Defendant "knew" he resided in Ohio at first publication. And Plaintiff still does not agree with that court's ruling, as Defendant continued to reaffirm his defamation even after he was directly told Plaintiff resided in Ohio, per footnote 1 above.

It would be unduly burdensome to diversity plaintiffs and the courts that they be always required to file multiple simultaneous lawsuits in multiple states, doubling or even tripling effort, time, and expense, or to require plaintiffs to magically anticipate in advance unexpected adverse technical rulings. It is prima facie reasonable that a citizen of Ohio should have a cause of action in Ohio against parties acting in concert across several states to defame him, for (a) Ohio has an interest in protecting the rights of its citizens, (b) diversity jurisdiction often recognizes such a choice of venue, and (c) Plaintiff had well-pled reasons to believe the Defendant knew or should have known he resided in Ohio when he defamed him or explicitly targeted his Ohio business relations (see *Carrier v. FreethoughtBlogs Network et al.*, Dkt. 17 and 40). As Plaintiff's pursuing the case in Ohio was reasonable and its outcome unforeseeable to him, tolling the statute to continue a case that has been diligently executed from the start serves the interest of justice in ensuring Plaintiff has access to a proper trial of his case; whereas allowing offenders to evade trial by mere technical device does not.

Finally, Defendant reaffirmed and reiterated his defamation of the Plaintiff in a new publication on 28 June of 2018 and again thereafter (see Affidavit of Richard Carrier, ¶4-6, here attached, and **Exhibit 1** and **Exhibit 2** thereto attached), hereafter the "Myers Video", reinstating Minnesota's two year statute of limitations. Plaintiff has filed in Minnesota well within that statute. This action is therefore not time-barred by any argument presented by the Defense.

For example, in the Myers Video at timestamp 2:50 and continuing through timestamp 3:40 (see here attached Affidavit of Richard Carrier, ¶17) Myers posts a fully-legible screen-capture of his original defamatory statement (for which he is being sued in the instant case), which is a republication in new a format, edition, and context.[3] Myers then speaks over that image with new affirmations that his statements therein were actually true, and that there was nothing false or in need of correction. Later in the Myers Video, at and after minute 11:17, while addressing the question of whether Plaintiff ("Carrier") is correct in his stating and presenting evidence that the Myers allegations are false (as shown at and after timestamp 10:50), Myers states "Why no, Carrier is not correct, which is why we are standing up to his bullying" (see here attached Affidavit of Richard Carrier, ¶18-19). With that statement Myers reaffirms his prior defamation.

---

[3] Herein, the word "timestamp" shall mean the number of minutes and seconds from the beginning of the video that the stated content appears, in the format mm:ss (minutes:seconds).

Likewise, throughout the Myers Video (particularly between timestamp 2:50 and 6:00) Myers attempts to defend his allegations against subsequent criticisms (see here attached Affidavit of Richard Carrier, ¶20). During the course of which Myers lies about the investigation he did not actually conduct, as I've already pled,[4] and to which I now add further evidence.[5] Myers' own lies about that, in conjunction with the truth of what actually happened (op. cit.), demonstrate his willful and deliberate avoidance of actually investigating his allegations even while falsely purporting to investigate them and give a fair hearing, and further demonstrate his knowledge that the truth would evince his actual malice (thus requiring him to lie about it).

Furthermore, after publication of that video, Defendant continued posting comments in response to persons questioning his claims, among which comments is his declaration (herein attached as "Affidavit of Richard Carrier in Support," ¶6, and as **Exhibit 2** thereto) that "Since the accusations came from people who considered themselves his friends and were actually sympathetic to his arguments, I don't think your conspiracy theory holds up. We're not getting checks from Big Jesus." Which statement likewise publishes a call to a new

---

[4] See Complaint, Dkt. 1, ¶34-36, and Ibid., Exhibit 2, "Affidavit of Richard Carrier Concerning Paul Myers," ¶5-10;

[5] See attached hereto Affidavit of Richard Carrier, ¶7-16; and my testimony under deposition now on record in the instant case as Dkt. 10, Exhibit 1, p. 42 at 7-25 and p. 43 at 1-2.

audience to conclude that Defendant's past defamatory statements were truthful, thereby reinforcing their republication by calling new attention to them and affirming their truth.

*Shepard v. TheHuffingtonPost.Com, Inc.*, No. 12-4036, 2013 U.S. App. LEXIS 11490 (8th Cir. June 7, 2013) rules that the statute of limitations begins with "the first date of publication where subsequent republications have **the same** content as the original publication," but the Myers video (and comment appended thereto) is new content; it is not simply a reprint of his original articles. It is "the restatement or alteration of the allegedly defamatory" content and therefore does not fall to the single publication rule. The *Shepard* court followed and affirmed the Ninth Circuit's reasoning here, declaring that the "seminal case on this point is *Firth v. State of New York*, 775 N.E.2d 463 (N.Y. 2002)," and "Every court to consider the issue after *Firth* has followed suit." Therefore it is apposite that *Firth* held that "Republication, retriggering the period of limitations, occurs upon a **separate aggregate publication** from the original, on a **different occasion**, which is **not merely** 'a delayed circulation of the original edition'" but rather "the subsequent publication is intended to and actually reaches a new audience."

Publishing a video on YouTube to reference and reaffirm written allegations previously published elsewhere on a blog certainly qualifies on all of these

8

conditions. Indeed, the *Firth* ruling extended this conclusion even to, "for example, repetition of a defamatory statement in a later edition of a book, magazine or newspaper," which therefore "may give rise to a new cause of action." The Myers video, by reiterating, reaffirming, referencing, and defending his previous defamatory statements constitutes "communicating the earlier and separate defamatory information to a new audience" under *Firth*, and *Shepard* endorses and adopts *Firth.*

**2. Merits**

Defense seeks to obfuscate the actual matter in dispute with salacious allegations of "inappropriate behavior" on behalf of the Plaintiff. Since "inappropriate behavior" (likewise "misconduct") is a vague assertion of opinion, it is to be noted that no such statement is alleged defamatory in Plaintiff's Complaint in this case. Plaintiff does not regard the claim that he "sexually propositioned a young student" as defamatory, for example, as admitting he asks for and respects consent with adult parties does not substantially injure Plaintiff's reputation. Had that been all the Defendant said, we would not be here before

the court now. Likewise every other irrelevant assertion Defense now makes in its motion in regards Plaintiff's behavior.[6]

To the contrary, the singular statement that is the matter of this lawsuit is the Defendant's assertion, *above and beyond* those other trivial observations, that the Plaintiff engaged in "persistent" sexual behavior "in defiance of specific requests that he cease." In other words, not alleging the Plaintiff asks for and respects consent with adult persons, which is not defamatory or injurious, but alleging the Plaintiff *disregards* the consent of adult persons, persisting even after being informed of disinterest or told to stop ("**in defiance** of **specific** requests that he **cease**"), which conduct is harassment; the former conduct is not. It is this that constitutes an allegation of "serious sexual misconduct" that, being false and known to be false, warrants an action for defamation, indeed defamation per se (per below, §3). Not the other assertions.

In fact, Defense's own pleading in his Motion to Dismiss demonstrates Defendant's knowledge that this statement was known to the Defendant to be false (and thus was uttered with actual malice), as he pleads now that he only claimed Plaintiff asked for and respected consent, now alleging Defendant

---

[6] Or indeed even false assertions, e.g., Defense claims of Plaintiff that "he does not think there is much of a difference between asking someone on a date and asking someone to have sex with him," citing a section of Plaintiff's prior deposition in which the opposite is stated, Plaintiff there affirming sex is only "a subcategory of dating" and not identical to it (Defense Motion, p. 3, citing Defense Motion's Exhibit 1, p. 37, ¶ 8-15).

merely complained of the age or social status of the parties involved or the incidental administrative rules governing them, which is false. He went further and claimed Plaintiff disregarded consent; and indeed thereby alleged criminal activity. For such conduct is widely understood by the public to be a crime, and actually is a crime under Arizona and Missouri law (Arizona Revised Statutes Title 13. Criminal Code § 13-2921; Missouri Rev. Stat. § 565.090), where two of the incidents Defendant was referencing allegedly occurred, in fact at that time the only ones otherwise published. Likewise, it is a crime even under Minnesota law (2018 Minnesota Statutes, § 363A.03, Subd. 43(3), which though subsequently amended has been relevantly the same since 2010).

As per *Longbehn v. Schoenrock*, 727 N.W.2d 153 (Minn. Ct. App. 2007), "the test is not whether the speaker intended to make an accusation, but whether a reasonable person under similar circumstances would understand the statement as making an accusation or imputing criminal or serious sexual misconduct to another" (citing *Anderson v. Kammeier*, 262 N.W.2d at 372, "[T]he test [is] whether a reasonable person would believe the statement to be defamatory"). The innocuous statements Defendant falsely claims he restricted his publication to do not qualify here, such as an adult's age or status as a student, or administrative policies Plaintiff was not even subject to anymore by the time Defendant published his accusations. Rather, his *additional* statement

that Plaintiff persisted even after being told to stop *does* qualify here. And it is *this* statement for which Defendant is being sued.

That the Defense argues disingenuously to obscure this distinction is illustrated in their Motion by how their narrative obfuscates key facts. For example, they neglect to mention that the Plaintiff was no longer subject to the SSA's non-fraternization policy (which was distinct from their sexual harassment policy) once he left their Bureau a year before Defendant defamed him, and that afterward in 2015 the SSA had explicitly authorized Plaintiff to continue speaking and selling at SSA events and the record shows he did so, frequently, thereafter. This had no effect on his reputation. Likewise, Defense motion alleges Plaintiff "refuses to take responsibility for his actions," referencing those trivial matters, when Plaintiff in fact explicitly did take responsibility for those matters, in his own publications a year before Defendant's defamation, again with no effect on his reputation, illustrating the distinction between these trivial accusations Defense is now belaboring the court with, and the serious accusation Defendant is actually being sued for.[7]

The Defendant likewise now alleges he was merely repeating another blogger's statement that the Plaintiff "met [certain women's] polite deferral of his interest with more blunt expressions of interest." What Defendant here asserts is

---

[7] See *Carrier v. Freethought Blogs*, Defendants' Motion to Dismiss (Dkt. 10), Exhibit 1, Richard Carrier, "How to Do Wrong Right, June 5, 2015."

factually untrue. That statement makes no mention of what is meant by "interest" (which can mean mere attention not a proposition) or "deferral" (which can mean a mere lack of reply not "specific requests that he cease"). It therefore does not justify Defendant's actual choice of words. Defendant went beyond what his sources stated and added new factual assertions that elevate what was a vague statement of subjective perception into a factually false statement of immoral and illegal behavior.

Similarly, Defense claims "Dr. Myers merely wrote about previously published, first-hand allegations of sexual harassment by Carrier," but that, too is literally false. There was in fact only one (not plural) "previously published, first-hand allegation" and it contained no content referencing Dr. Carrier "persisting" after "specific requests that he cease." [8] In fact *no* prior publication did so, whether first, second, or third hand. It should be noted that merely asking someone on a date and respecting their answer is not sexual harassment under any relevant law or policy. Thus Defendant cannot claim there was any evidence of "sexual harassment" published by anyone for him to repeat. Defendant indeed

---

[8] See *Carrier v. Freethought Blogs*, Complaint, Dkt. 1, ¶46-47, and 70-72, the latter even post-dating Defendant's own defamatory publication; no first-hand accounts were elsewhere published, Ibid., ¶42-43, 66-68, but even what Defense now cites in their Motion to Dismiss (pp. 16-17) as "Ohio Suit Dkt. No. 1 at Exhibit 3" contains no reference to Dr. Carrier "persisting" after "specific requests that he cease," nor does what Defense cites as "Ohio Suit Dkt. No. 1, Exhibit 4." Nor does what Defense cites as "Ohio Suit Dkt. No. 1, Exhibit 2," per above. And that exhausts all of Defense's cited "evidence."

even admitted his doubts about the only published first-hand *allegation* of sexual harassment (Complaint, Dkt. 1, ¶33), proving actual malice. Further proving actual malice, Defendant subsequently lied about his refusal to investigate his allegations against the Plaintiff, evincing not only deliberate inaction (and not mere negligence), but also guilt, as lying entails he knew his failure to investigate his allegations was so outrageous it had to be denied (Ibid., ¶34-36; likewise, further, ¶37-39).

Defense asserts the mere failure to investigate does not establish actual malice. But this case goes so far beyond a mere failure as to actually fit apposite cases in which a failure to investigate *was* ruled evidence of actual malice by the Supreme Court. In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), there were obvious reasons to doubt the reliability of a source yet the defendant failed to take "elementary precautions" to test their veracity. The *Curtis* court concluded:

> The evidence on the preparation of [defendant's] article … cast serious doubt on the adequacy of the investigation underlying the article. It was [plaintiff's] contention that the magazine had departed greatly from the standards of good investigation and reporting and that this was especially reprehensible, amounting to reckless and wanton conduct, in light of the devastating nature of the article's assertions.

This is apposite here (Complaint, Dkt. 1, ¶28-32).

Reasons to question "the veracity of [his] source" Amy Frank were so obvious Myers even admitted to distrusting her (Complaint, Dkt. 1, ¶33). Equally obvious reasons to question his other sources' veracity were available to Myers: from another accuser Lauren Lane's concealing from Myers the fact that she was actually Carrier's disgruntled ex-girlfriend who had actually pursued him and whose account was contradicted by documents and eyewitnesses, to another accuser Heina Dadabhoy's concealing from Myers the fact that she admitted in her own correspondence that Carrier did not do with her what Myers is now being sued for claiming. Despite all of this, Myers failed to take even elementary precautions to address the questionable veracity of his sources, such as hearing witnesses and examining documents challenging his sources' reliability, all of which were made on ready offer to Myers by Carrier, yet were flat out rejected by Myers. Myers would not even consider them (and still will not, to this day). Such willful blindness goes beyond mere negligence and rises to the status of reckless disregard for truth or falsity. Indeed even Myers admits asking for and consulting witnesses and documents before affirming such allegations was required by his own standards of investigation (Myers Video, timestamp 6:49 forward, in the context of timestamp 4:55 forward; see herein attached Affidavit of Richard Carrier, ¶9-16), but, instead of refusing to seek and review such evidence, tells the lie that Plaintiff refused to provide them.

Per *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989), at at 692, 109 S.Ct. at 2698, "Although failure to investigate will not alone support a finding of actual malice," nevertheless "the purposeful avoidance of the truth is in a different category." The *Harte-Hanks* court found that failure to interview witnesses and examine exonerating materials established actual malice exactly as it should in the instant case; for just as in *Harte-Hanks*, "the [defendant's] inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the] charges" (hence see Complaint, Dkt. 1, ¶34-36). For "if a defendant has reason to doubt the veracity of its source, then its utter failure to examine evidence within easy reach or to make obvious contacts in an effort to confirm a story would be evidence of its reckless disregard." Indeed the *Harte-Hanks* Court's conclusion turned not upon the newspaper's failure to prove the story true but upon its **deliberate decision to avoid information** that might have proven the story false. This is exactly what Defendant has done.

### 3. Amount in Controversy

Defense Motion asserts "Plaintiff's claim also fails to meet or exceed the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a)." Defense's Memorandum in support makes no argument for this conclusion. Plaintiff affirms

total damages per se and even per quod in this case will well exceed the required amount.

DATED this 29th day of July, 2019.

Respectfully submitted,

/s/ Richard C. Carrier
_____

Richard C. Carrier (pro se)
134 W. Tulane Rd. Apt. B
Columbus, OH 43202-1943
(510) 932-9536
richard.carrier@icloud.com